WESTERN DISTRICT OF WASHINGTON
FEDERAL BANKRUPTCY COURT AT TACOMA

| | |
|---|---|
| In re: | Main Case: 22-40098-BDL<br>Chapter 11 proceeding |
| HERBERT L. WHITEHEAD, III, | Adversary Case No. |
| Debtor. | |
| KENNETH WREN and ALICE WREN, husband and wife; | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523** |
| Plaintiffs, | |
| v. | |
| HERBERT L. WHITEHEAD III, individually; and the marital community of HERBERT L. WHITEHEAD III and JENNIFER L. WHITEHEAD; | |
| Defendants. | |

COME NOW Plaintiffs Kenneth and Alice Wren (hereinafter "Wren"), and for their complaint against defendants Herbert L. "Butch" Whitehead III, individually, and the marital community of Herbert L. Whitehead III and Jennifer L. Whitehead, allege the following facts and causes of action.

**ADVERSARY COMPLAINT**     **- 1**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

# I. JURISDICTION

1.1     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b) and Local Civil Rule 87 of the U.S. District Court for the Western District of Washington.  This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2), including §157(b)(2)(H), (I) and (J).

1.2     Venue is proper in the U.S. District Court for the Western District of Washington under 28 U.S.C. §1409.

# II. PARTIES

2.1     Plaintiffs Kenneth and Alice Wren are husband and wife.  They reside in Lake Tapps, Pierce County, Washington.

2.2     Defendant Herbert L. Whitehead III, also known as Butch Whitehead, resides at 2419 199th Ave. Ct. East, Lake Tapps, Pierce County, Washington 98391 with his wife, Jennifer L. Whitehead.  All of the acts of defendant Herbert L. Whitehead that are complained of herein were, on information and belief, taken in the interests of Herbert "Butch" Whitehead's individual and marital estates.

2.3     Nonparty Stanford and Sons, LLC ("Stanford") is a Washington Limited Liability Company.  It is a defendant in the underlying Washington state court action known as Kenneth and Alice Wren v. Stanford and Sons, LLC, et al., Pierce County Superior Court Cause No. 20-2-04347-3 ("Pierce County Action").  At the times relevant hereto, Stanford did business under the trade name "Puyallup Car and Truck" ("PCAT").  PCAT sold used cars from a location at 701 2nd St. NE, Puyallup, WA 98372-3012.  On information and belief, Stanford's sole owner and member is Kenneth Brautigan.

2.4     Nonparty David G. Whitehead is the child of defendants Herbert and Jennifer Whitehead.  He frequently uses his middle name of "Gage".  Until recently he resided in Lake Tapps, Pierce County, Washington with his parents.  On information and belief he was born in 1996, is single and continues to reside in Pierce County, Washington.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

2.5     Nonparty J & N Investments Inc. ("J & N") is a Washington corporation doing business in both Snohomish and Pierce County.  According to the records of the Washington Secretary of State, Henry L. Russell, his wife Victoria L. Russell, and their son Jayson Russell are the sole members of J & N.  J & N does business under the trade name "Bulldog Auto Sales & Service" ("Bulldog").  J & N's Washington state records list two business locations, one at 9922 SR 532, Suite B, Stanwood, WA 98292-8084, and the other at 701 2nd St. NE, Puyallup, WA 98372-3012.  On information and belief, J & N represents is a wholesaler of automobiles, rather than a retail dealer.

2.6     Nonparty Henry L. Russell is an owner and a governing person of Nonparty J & N.  In addition to Henry Russell, two other governing persons are identified for J & N, specifically his wife Victoria L. Russell and their son Jayson Russell.  Henry Russell is also known by the nickname "Murphy."

2.7     Nonparty Southwest Enterprises, LLC, is a Washington limited liability company owned by defendants Herbert and Jennifer Whitehead, with a business location in Pierce County, Washington, and real property in Arizona.

2.8     Nonparty Mt. View Enterprises, LLC is a Washington limited liability company owned by defendants Herbert and Jennifer Whitehead, with a business location in Pierce County, Washington.

2.9     Nonparty Whitehead Consulting, LLC is a Washington limited liability company owned by defendants Herbert and Jennifer Whitehead, with a business location in Pierce County, Washington.

2.10    Nonparty Whitehead Enterprises, LLC is a Washington limited liability company owned by defendants Herbert and Jennifer Whitehead, with a business location in Pierce County, Washington.  In form and effect, the evidence leads to the conclusion that Whitehead Enterprises, LLC is the alter ego of defendants Herbert and Jennifer Whitehead.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

2.11　　Nonparty Duward William Frame, IV at the times relevant to this suit resided in Seattle, King County, Washington, and worked in Pierce County.

2.12　　Nonparty First Horizon Home Loans, a Division of First Tennessee Bank N.A., its successors and assigns (hereinafter "First Horizon"), is a lender with a first and second deed of trust on real property located in Lake Tapps, Washington, which property is the subject of the cause of action for judicial foreclosure.  Because First Horizon's first and second position deeds of trust are superior to plaintiff's third-position of trust, First Horizon is named for notice purposes only.

2.13　　Nonparty First Nicholas LeClercq and Susan LeClercq Family LLC, formerly dba First LeClercq LLC, and now known as the Totem Lake Warehouse LeClercq LLC (hereinafter "LeClercq"), held a judgment against defendants Herbert L. Whitehead III and Jennifer Whitehead dated May 11, 2010, in the amount of $245,634.77, together with interest, costs and attorneys' fees, which judgment was also filed on May 11, 2010.

## III.　　FACTS

### A.　　Loans to Stanford and Sons, LLC

#### 1.　　The Wrens' $1,200,000 Loan

3.1　　To the extent legitimate, the objective of Stanford and Sons, LLC was to operate a business buying and selling used automobiles under the trade name "Puyallup Car and Truck" ("PCAT").  In early 2016, however, Stanford and Sons had insufficient capital with which to operate its business.  Stanford and Sons therefore looked for a source of capital.  As a part of that search for money, Kenneth Brautigan asked Kenneth and Alice Wren to make Stanford and Sons a $1,200,000 loan.  Defendant Herbert "Butch" Whitehead was directly involved on behalf of PCAT in that request for a loan as well.

3.2　　Plaintiff Kenneth Wren had known Brautigan for many years, had recently sold his own car dealership, and was open to considering the loan request.  During the period when plaintiffs were considering this request for a loan, defendant Butch Whitehead presented

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

himself to plaintiff Kenneth Wren as being an owner/partner of Stanford and Sons, along with Brautigan. During the negotiations in early 2016, Ken Brautigan's step-father was terminally ill. Mr. Brautigan has testified that he spent weeks of sleepless nights helping to provide hospice care for his step-father until he passed away on approximately February 22, 2016. As testified to during Mr. Brautigan's Pierce County Action deposition, defendant Butch Whitehead took over the negotiations for presenting Stanford and Sons' expansion plan into, not only wholesale vehicle sales, but also retail auto sales. Defendant Butch Whitehead was the primary person who put forward the documentation that was provided to Kenneth Wren to convince Mr. Wren to loan Stanford and Sons flooring funds for their expansion. That documentation took the form of a 58-page "Explanation of Pro forma and 2016 Projections" that has been produced in the Pierce County Action bates stamped 2016 PF&P 000001 to 58.

3.3     As a part of the security offered to plaintiffs in exchange for a loan to Stanford and Sons, defendant Whitehead suggested that a home in Arizona be offered as part of the security for ultimate repayment. Plaintiffs understood that that home in Arizona used to belong to the Whiteheads personally, and that through a series of transactions had been transferred to Stanford and Sons, LLC. In addition to the real property in Arizona, Kenneth Brautigan, Stanford and Son, and defendant Butch Whitehead offered a variety of other assets as security. Because the proceeds of the loan were to be used in large part to purchase inventory, the parties viewed it as a "flooring" loan which typically involves the grant to the lender of a security interest in all inventory. Accordingly, the parties agreed that the Wrens would have a security interest in all inventory and other assets of Stanford and Sons, LLC, dba Puyallup Car and Truck.

3.4     In both justifiable and reasonable reliance on all of the representations of Kenneth Brautigan, Stanford and Son, and defendant Butch Whitehead, including the Pro Forma at 2016 PF&P 000001 to 58, plaintiffs agreed to loan Stanford and Sons $1,200,000, conditioned as stated above upon the receipt of a wide variety of liens and other security. On

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

March 2, 2016, Stanford and Sons, LLC, signed a promissory note for $1,200,000, pursuant to which terms plaintiffs Kenneth and Alice Wren loaned the stated sum to Stanford and Sons. As stated in that promissory note, payments were interest only, with a balloon payment of the principal amount due on March 2, 2017. A true and accurate copy of that promissory note, bates stamped KW 000027, is attached hereto as Exhibit 1.

3.5 The March 2, 2016 promissory note was not paid in full on March 2, 2017. Instead, Stanford and Sons continued to make interest-only payments. Stanford and Sons had been providing certain financial statements to the plaintiffs up to that point, including the Balance Sheets and Income Statements for June, July and November 2016, which showed the company making a profit. (*See* Bates Stamped documents Audit – 000061 – 72.) Following the March 2, 2017 default on the terms of repayment, plaintiffs Wren, Stanford and Sons, Kenneth Brautigan, and defendant Butch Whitehead discussed rolling the loan over into a "line of credit" of some sort. On July 20, 2017, defendant Whitehead wrote to put a positive spin on the condition of Stanford and Sons, and he stated that "I am not apposed [sic] to that but would like to see the terms you come up with." With that email, defendant Whitehead also provided what he represented as being Stanford and Sons inventory. (Audit 000018 - 20.) On July 25, 2017, and on behalf of plaintiffs Wren, Ms. Nicola Lee Bley Asquith, aka Nikki Bley, wrote to Ken Brautigan to request a variety of financial materials, including business and personal tax returns, six months of bank statements, the 2016 Year End profit and loss and balance sheet, and the current year's (i.e., 2017) monthly and year-to-date financial statements. (Audit 000021.)

3.6 In response to Ms. Bley, Mr. Brautigan passed the ball to Butch Whitehead. (Audit 000023.) This was done, reasonably enough, because both the documentary evidence and oral deposition testimony obtained in the Pierce County Action establish that defendant Butch Whitehead was in charge of the financial operations of Stanford and Sons, including providing specific directions to the company bookkeeper Stephanie Townsend on how to

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

allocate income and expenses in the company's "AutoDealer Plus" accounting system. On July 31, 2017, Butch Whitehead wrote to Ms. Bley to state that Brautigan's 2016 tax return, which would include the financial results of Stanford and Sons, were not complete as Brautigan had requested an extension. But, Whitehead said the return would be provided when complete. (Audit – 000025, 26. Through discovery, the Wrens have determined that Brautigan's 2016 taxes were not completed by CPA Norm Smith until April 19, 2018. NRS 001945.) Defendant Butch Whitehead also affirmatively represented that "we are profitable". (Audit 000027.) And, he provided Balance Sheets and Income Statements (printed on August 1, 2017) for year end 2016 and the first half of 2017 representing that Stanford and Sons was profitable. (Audit 000077 – 86.)

       3.7     Eventually, on January 1, 2018, Stanford and Sons, LLC, executed an Amended Promissory Note that rolled the March 2, 2016 loan for $1,200,000 into a term loan payable at the rate of 6% a year, with the full sum of principal and interest due five years thereafter. In the event of a default, interest increased to 16% per annum. Plaintiffs Wren agreed to this refinancing of the original loan in both justifiable and reasonable reliance on all of the representations, both written and oral, received to that date from defendant Butch Whitehead, Stanford and Sons, Mr. Brautigan, and other agents of Stanford and Sons like Stephanie Townsend. A true and accurate copy of that promissory note, bates stamped KW 000047, is attached hereto as Exhibit 2.

       3.8     All payments on the January 1, 2018 promissory note were made as required through July 1, 2019, in the amount of $19,887 per month. On July 16, 2019, Kenneth Brautigan informed plaintiffs that Puyallup Car and Truck was closing and that Stanford and Sons could not continue to make payments on the loans. Consistent with that notice, Stanford and Sons defaulted on its August 1, 2019 payment. As of the date of default, Stanford and Sons owed plaintiffs $960,028.23, plus interest accruing at 16% per annum. Brautigan's announcement came as a surprise to Mr. Wren because Stanford and Sons had generally been

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

making its loan payments on time, and the payments made by Stanford on the $1,200,000 were typically in an amount that was more than the required minimum. During this phone call, Mr. Brautigan offered to surrender all of the collateral covered by the security agreements to the Wrens as a partial repayment of the loans, including the vehicles that made up that collateral, the books, records and other assets of Stanford and Sons, LLC.

### 2. The Wrens' $500,000 Loan

3.9     In early 2017, before the March 2, 2017 due date when the original $1,200,000 loan was supposed to be repaid in full, Stanford and Sons requested an additional $500,000 loan from plaintiffs, also for use in Stanford and Sons' used car business. As mentioned above, the Wrens had been provided with Balance Sheets and Income Statements for June, July and November 2016, which showed the company making a profit. (*See* Bates Stamped documents Audit – 000061 – 72.) Also as previously alleged, those Balance Sheets and Income Statements had been prepared under the direction and control of defendant Butch Whitehead.

3.10    In both justifiable and reasonable reliance on all of the oral and written representations received by the Wrens to that date, plaintiffs agreed to extend this additional loan. As a result, on February 24, 2017, Stanford and Sons, LLC, signed a promissory note for $500,000 to evidence that debt and to set the terms of repayment. As stated in that promissory note, interest accrued at 8% per annum, with minimum monthly payments of $12,206.46 per month, with a balloon payment of the unpaid principal plus interest due four years later on February 24, 2021. A true and accurate copy of that promissory note, bates stamped KW 000012, is attached hereto as Exhibit 3.

3.11    Payments were made on the February 24, 2017 promissory note through July 11, 2019, with the last payment of $12,206.46 being paid at that time.

3.12    Again, on July 16, 2019, Mr. Kenneth Brautigan, informed plaintiffs that PCAT was closing and that Stanford and Sons could not continue to make payments on the loans.

Law Offices of
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Stanford and Sons has, in fact, defaulted on its payment obligations. Stanford owes plaintiffs $227,844.66, plus interest accruing at 16% per annum, under this $500,000 promissory note.

**3.      Security for the Stanford and Sons Loans**

3.13    As previously indicated, each of the two foregoing loans to Stanford and Sons was secured through a number of mechanisms. One mechanism was a personal guaranty of both notes by Kenneth Brautigan and his wife Jessica Brautigan.

3.14    In addition to the personal guaranties of the Brautigans, Stanford and Sons executed a Commercial Security Agreement and a Pledge Agreement for each of the two loans now in default. Those security agreements expressly defined the Collateral subject to being sold or transferred to satisfy the promissory note debts, and further, expressly authorized the filing of a UCC 1 Financing Statement. That UCC 1 was filed on March 7, 2016, under File Number 2016-067-3187-3. By filing that UCC 1, plaintiffs perfected their security interest in the following collateral:

> All goods, inventory (vehicles, parts, and accessories), motor vehicle title documents, chattel paper, accounts, furniture, fixtures, equipment, investment property, instruments, commercial tort claims, all other tangible and intangible property, and general intangibles including goodwill and proceeds of sale of the same.

(Exhibit 4, KW 000075.) This broadly-written security interest was intended to be just that, and it was expansive enough to include within its scope the security interests Stanford and Sons held to secure the debts owed to it by other individuals, here most specifically debts owed by defendants Herbert "Butch" Whitehead and his marital community to Stanford and Sons, as further secured by a Deed of Trust on the Lake Tapps Real Property.

3.15    In addition to the personal guaranties of the Brautigans and the collateral subject to the above-quoted UCC 1, Stanford and Sons, LLC executed a Deed of Trust and Assignment of Rents to the Wrens over a piece of property located in Maricopa, Arizona, with a street address of 39903 N Long Landing Ct., Anthem, Arizona 85086, to secure the $1,200,000 loan.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Upon Stanford and Sons' default, Stanford and Sons Quit Claimed that property to the Wrens. (Exhibit 5, KW 000067 - 70.)

3.16    At the time of default on these loans, there were approximately twenty-eight (28) motor vehicles, one boat, two trailers, motorcycles and skidoos owned by Stanford and Sons, dba Puyallup Car and Truck, that were supposed to be in inventory and subject to the Wrens' security interest.  Consistent with Stanford and Sons' underlying agreement, on July 24, 2019, Stanford and Sons executed a Bill of Conveyance in Lieu of Foreclosure that executed on plaintiffs' security interests, thereby transferring ownership and legal title to the aforementioned collateral to plaintiffs Wren. (Exhibit 6, KW 000005 - 11.)  At that point, the collateral subject to plaintiffs' security interests became the property of the plaintiffs.

3.17    In addition to the foregoing surrender and transfer of assets by PCAT, the Brautigans personally, voluntarily surrendered and transferred to plaintiffs Wren significant personal assets, leaving them as of the time of the filing of the Pierce County Action potentially judgment proof.  On information and belief, those circumstances have not materially changed.

3.18    Through the voluntary surrender of the Brautigan's personal assets and the readily available assets of Stanford and Sons, plaintiffs Wren hope to recover approximately $500,000 to $600,000 to apply to the principal debt of $1,187,872.89, plus interest, fees and costs.  Those recoveries are, however, subject to offset by ongoing legal expenses, plus accrued interest.  Given the uncertainty of the net value of those recoveries, plaintiffs Wren moved in the Pierce County Action for a summary judgment order holding Stanford and Sons liable for $1,187,872.89, plus prejudgment interest accruing at the rate of 16% per annum from August 1, 2019.  That motion was granted, and a summary judgment was so filed in the Pierce County Action, on October 4, 2021.

Law Offices of
William A. Kinsel, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

**B.**    **Stanford and Sons Defaults; Plaintiffs Investigate the Causes of Loss**

**1.**    **Plaintiffs' Efforts to Mitigate Their Damages; Confrontation with Butch and Gage Whitehead**

3.19    On Tuesday, July 16, 2019, prior to the execution of **Exhibit 6**, plaintiff Kenneth Wren, at the advice of Kenneth Brautigan, went to Puyallup Car and Truck's business location to take possession of the collateral securing the loans, including PCAT's inventory. When plaintiff Kenneth Wren arrived, Butch Whitehead and Gage Whitehead were there. Brautigan, Butch Whitehead and Gage Whitehead had been arguing, with Brautigan wanting to deliver the collateral to plaintiffs, and the Whiteheads demanding that the collateral be given to them. Because of the real risks of a physical altercation, Brautigan had called the Puyallup Police to intervene. Brautigan left after the police arrived.

3.20    The mere presence of Butch and Gage Whitehead at the PCAT business location on July 16, 2019 was not particularly surprising to Wren because, as previously stated, Butch Whitehead was directly involved in the requests for the loans to Stanford and Sons, and in the day-to-day operation of PCAT. Illustrative of that involvement is defendant Butch Whitehead's email dated February 5, 2016, which provided the title report and other information on the real property at 39903 N. Long Landing Court, Anthem, AZ 85086. (Exhibit 7, KW 000263.) That real property was provided as partial security for the $1,200,000 loan. Also, both the Wrens and the Whiteheads live on Lake Tapps, and they know of each other within the confines of what is a relatively small community within Pierce County.

3.21    While the physical presence of Butch and Gage Whitehead at PCAT was not a particular surprise to Ken Wren, the demands and arguments of the Whiteheads were unexpected. In short, while the Wrens' security agreements reflected plaintiffs' secured position as the legal owner of all PCAT's personal and business property, the Whiteheads were contending that a portion of PCAT's inventory and other assets was somehow really Butch or Gage's property. As events developed over the ensuing months, the Whiteheads' arguments in

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

this regard solidified on the position—now formally admitted both in this bankruptcy and in state court—that the collateral then present at PCAT supposedly belonged to Gage Whitehead.

3.22    During this July 16, 2019 verbal altercation at PCAT's business location, there were 12 vehicles in particular that were the subject of the demands of the Whiteheads. Six of these vehicles had already been safely removed for the benefit of the plaintiffs before the Whiteheads arrived at the scene. Because of the need to keep the peace, and because the dispute could not be resolved in that setting, plaintiff Kenneth Wren proposed a temporary resolution that involved the plaintiffs retaining physical possession of six of the vehicles, while the Whiteheads took possession of the remaining six, even though the records indicated that all 12 were legally owned by Stanford and Sons, were properly the assets of Stanford and Sons, and thus were subject to the Wrens' security interests. Plaintiff Wren and the Whiteheads agreed to that temporary resolution, and the peace was thereby preserved without plaintiffs Wren having waived any of their legal or equitable rights to any of that property.

3.23    In addition to the vehicles, a 2012 Pontoon boat, its trailer, a 2015 Chevy Duramax truck, and a classic 1977 Ford F150, were all titled in Stanford and Sons name, but they were stored at Butch Whitehead's property, or were being used by defendant Whitehead to pursue PCAT's business interests. These items were therefore subject to the Wrens' collateral rights and are listed on Exhibit 6. Nonparty Gage Whitehead now contends that he has an interest in those items of personal property, while defendant Butch Whitehead has relinquished all claims to the same.

3.24    As previously mentioned, and consistent with plaintiffs' rights as secured creditors, on July 24, 2019, the Wrens and Stanford and Sons, LLC, executed the Bill of Conveyance In Lieu of Foreclosure that transferred ownership of this property to plaintiffs. (Exhibit 6.)

3.25    Later that month, defendant Butch Whitehead met with plaintiff Kenneth Wren and attorney James Aiken at Mr. Aiken's law office. Defendant Whitehead expressed the

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

desire to keep and buy the 2015 Chevy Duramax truck, which he had been driving for work. Defendant Whitehead also said that his family had a vacation planned on the Columbia River for August 3 and 4, 2019, and he asked plaintiff Wren if they could borrow the boat for that vacation. Plaintiff Wren and defendant Whitehead further discussed and agreed that the boat and trailer were worth roughly $50,000, and if the Whiteheads were allowed to use it for that vacation, they would buy the boat and trailer at that price upon their return. Plaintiffs Wren and defendant Whitehead agreed to this proposal related to the boat and trailer. Attorney Aiken, however, expressed concern about the Whiteheads taking the boat unless it was insured, and Butch Whitehead agreed to buy insurance. Unfortunately, consistent with his behavior as described throughout this complaint, upon returning from Eastern Washington, the Whiteheads no longer had immediate, physical possession of the boat or 2015 Chevy Truck. Furthermore, they refused to pay for the same, and refused to explain what they had done with those items. As subsequent events revealed, defendant Butch Whitehead and Gage Whitehead together absconded with that truck, boat and trailer while "on vacation" and hid the same in Arizona with the intention of defrauding their creditors, in particular plaintiffs Wren. The Whiteheads returned that personal property to the state of Washington only after repeated orders to do so by Pierce County Superior Court.

2.      **Plaintiffs Discovered Widespread Fraud During their Subsequent Investigation; Stanford and Sons Assigns its Causes of Action**

3.26     Following these events of mid-July 2019, plaintiffs Wren took possession of the books, records and a computer server of PCAT. With the active assistance of Kenneth Brautigan, plaintiffs began an investigation into what had caused Stanford and Sons to blow through the $1,700,000 borrowed from the Wrens, and to default on its loan repayments. At the time of default, and thereafter, Kenneth Brautigan described to plaintiffs an extended series of events that ultimately led to the foregoing defaults. As described in more detail below, Stanford and Sons, LLC, has been used as a tool by defendant Butch Whitehead and the other

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

named nonparties described herein in a scheme to drain PCAT of its assets, including the $1.7 million loan proceeds, both to the damage of plaintiffs Wren, Stanford and Sons, and Stanford's personal guarantors, the Brautigans. As described below, defendant Butch Whitehead and other named nonparties described herein engaged in a protracted series of illegal activities, qualifying as an enterprise as defined by the Washington Criminal Profiteering Act, RCW Chapter 9A.82, that converted, stole and laundered both the cash and personal property of Stanford and Sons, to the ultimate damage of creditors/plaintiffs Wren, to the limited liability company known as Stanford and Sons, and to the Brautigans. All of those liabilities and debts are nondischargeable under 11 USC §523(a)(2)(A), (a)(4) embezzlement and larceny, and (a)(6).

3.27    In light of the above, plaintiffs Wren requested and received from Stanford and Sons, LLC, a conveyance of "[a]ll claims and causes of action Debtor has against third parties in contract, tort, equity, or otherwise." A true and accurate copy of that "First Amendment to Bill of Conveyance in Lieu of Foreclosure, bates stamped KW 000001-2, is attached hereto as Exhibit 8. As previously held in In re Mark E. Phillips, 2016 WL 7383964, pp.*2, 5 (US BAP 9th Cir. 2016), such an assignment of a business entity's claims against its insiders is enforceable through a nondischargeable judgment, in that particular instance under 11 USC §523(a)(4) for criminal theft, i.e. embezzlement, under Washington law.

3.28    Plaintiffs Wren therefore have standing to assert both their direct causes of action against defendants Whitehead, and as assignee of Stanford and Sons' causes of action against defendants Whitehead.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

**3. Defendants Whitehead Engaged in a Widespread Conspiracy with Other, Named Nonparties to Fraudulently Transfer the Assets of State Debtor Stanford and Sons, to the Ultimate Damage of both its Creditors, Plaintiffs Wren, as well as Stanford and Sons itself**

3.29    The members of the conspiracy to fraudulently transfer Stanford and Sons' assets to defendant Butch Whitehead and his co-conspirators, and the specific parts those named nonparties played in that conspiracy, are described below.

### (a)    Members of the Auto Wholesale Enterprise

3.30    As the evidence shows, once the $1,200,000 in Wren loan funds were received by PCAT, the members of the Auto Wholesale Enterprise promptly began dispersing the loan proceeds to themselves without delivering reasonable equivalent value to Stanford and Sons for the same.

3.31    Each of the following members of the Auto Wholesale Enterprise played a different role in a wide-ranging scheme that drained Stanford and Sons of its assets, thereby directly causing Stanford and Sons to breach its contractual obligations to repay the Wren loans, resulting in the losses that give rise to this lawsuit.

### (i)    Stanford and Sons, LLC, dba PCAT

3.32    Based upon the representations of defendant Butch Whitehead and Kenneth Brautigan, Stanford and Sons, LLC, was supposed to be the beneficiary of a business plan whereby PCAT was purchasing used automobiles from private-party sellers and auctions, primarily in British Columbia, Canada, using the funds provided by the Wrens' loans. Those vehicles were then to be imported into the State of Washington and re-sold to retail buyers in Pierce County, Washington, at PCAT's Puyallup facility. PCAT was to use the profits from those imports to pay back its operating loans to the plaintiffs, to pay salaries, etc., and to continue on with its business.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

**(ii)    Non-Parties Kenneth and Jessica Brautigan.**

3.33    Kenneth Brautigan is the sole owner of Stanford & Sons, LLC.  This is confirmed by Stanford and Sons' filings with the State of Washington.  ***See* Exhibit 9.**  While Mr. Brautigan appears to have believed that he was taking those actions needed to execute the business plan described in the preceding paragraph, Mr. Brautigan in fact enabled an expansive theft by the members of the Auto Wholesale Enterprise of PCAT's assets.  Mr. Brautigan's actions included either granting or allowing defendant Herbert "Butch" Whitehead III to exercise controlling authority over the employees and assets of Stanford and Sons, which authority defendant Herbert "Butch" Whitehead III abused through the theft, conversion and fraudulent transfer of the assets needed by PCAT to conduct its business and repay its loans to plaintiffs.

3.34    As previously stated, upon the failure of Stanford and Sons to fulfill its contractual obligations to the Wrens under the promissory notes, Kenneth and Jessica Brautigan acted to fulfill their personal obligations under a Continuing and Unconditional Guaranty by transferring to the Wrens what appeared likely to be all of the Brautigans' non-exempt assets in partial satisfaction of the default loans.  The Brautigans' assets have yet to be fully liquidated, but their worth is estimated to be $221,644.04, which is part of the previous estimated recoveries of $500,000 to $600,000.

3.35    Given these voluntary actions by the Brautigans, as of the filing of the Pierce County Action and this adversary complaint, the Wrens saw, and continue to see, no reason to name them personally as defendants in either action.

**(iii)    Defendant Herbert "Butch" Whitehead**

3.36    Despite not being the owner of Stanford & Sons, LLC, defendant Butch Whitehead represented himself to plaintiffs and members of the public as being a "partner" or similarly-interested owner of Stanford and Sons, d/b/a PCAT.  Even PCAT's bookkeeper and internal accountant, Stephanie Townsend, testified during her Pierce County Superior Court

ADVERSARY COMPLAINT                              - 16

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

deposition that "the way that things were presented to me, that they were "partners" (using air quotes), quote/unquote, and that they were running this business together." (12/8/20 Stephanie Townsend Dep., pp. 22:1-23:1, p. 54:1-6.

3.37    Plaintiffs Wren relied on Butch Whitehead's representations to that effect and, furthermore, observed him acting in the capacity of someone in control of PCAT.  Examples of these actions by Butch Whitehead include face-to-face meetings between plaintiffs and Butch Whitehead, where PCAT's financial performance was reviewed, as well as emails in which Butch Whitehead discussed the business of PCAT with the Wrens in a manner in which an owner would discuss the business.  One example of such an email is email dated July 20, 2017 bates stamped KW 000280 - 282, and attached hereto as Exhibit 10.  Other examples include the pro forma statement prepared by him as part of the application for the original $1,200,000 loan, and the various Balance Sheets and Income Statements prepared and distributed to the Wrens during the course of the other loan application and refinancing.

3.38    In addition to these public representations of being a partner in Stanford and Sons' business, defendant Butch Whitehead assumed and exercised the authority of a person in control of Stanford and Sons, LLC, making him an "insider" as defined in RCW 19.40.011(8)(b)(iii).  Examples of defendant Butch Whitehead's control of the affairs of PCAT was his acquisition and use of signature authority over Stanford and Son's Canadian bank accounts, his use of that authority over Stanford and Son's financial resources to transfer cash to himself and other entities for which no reasonably equivalent value was provided, his direction and control of the work of PCAT employees, and his trips to Canada to purchase used cars with the proceeds of the Wrens' loan for what was supposed to be inclusion in PCAT's retail inventory.

3.39    Another example of Herbert L "Butch" Whitehead's assertion of ownership and control over PCAT was his use of an April 10, 2017, Power of Attorney for Customs and Export Forwarding Agent, and an accompanying "Corporate Certificate" by which he was

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

falsely represented to be the president and owner of a Washington corporation named Puyallup

Car and Truck, duly authorized to execute documentation on behalf of PCAT to appoint an

agent and attorney for purposes of importing merchandise into the United States of America.

(Exhibit 11, POA 000001 to 3.)  While there are unanswered questions as to who actually

singed these forms as Herbert Whitehead, Butch Whitehead's use of those forms amount to a

knowing misrepresentation of his status at PCAT not only to individuals of the public, but also

to the United States of America.

3.40    Based on the facts laid out in this complaint, and as will be more fully proven at

trial, Herbert L. "Butch" Whitehead III intentionally organized, managed, directed, supervised,

or financed three or more persons with the intent to engage in a pattern of criminal profiteering

activity, as prohibited by the Washington Criminal Profiteering Act.  RCW 9A.82.060.  Those

actions, which at their heart represent an extensive pattern of theft of PCAT's assets, result in

nondischargeable debts pursuant to 11 USC §523(a)(2)(A), (a)(4) embezzlement and larceny,

and (a)(6). The persons so organized, managed, directed, supervised and financed included both

the other nonparties named herein, as well as employees of PCAT such as the bookkeeper

Stephanie Townsend who were unaware of the true intentions of defendant Herbert L.

Whitehead III and his co-conspirators.

### (iv)    David Gage Whitehead

3.41    David Gage Whitehead is the son of Herbert L. Whitehead III.  David Gage

Whitehead is an "insider" of PCAT as defined in RCW 19.40.011(8)(b)(vi).  Under the

direction of his father, David Gage Whitehead used both the financial resources and

organizational structure of PCAT to purchase and sell vehicles for his own personal benefit.

Ultimately, when Stanford and Sons defaulted on its loans to plaintiffs Wren, both he and his

father arrived at PCAT's Puyallup facility on July 16, 2019 to assert ownership of a number of

vehicles.  The Whiteheads left with six of those vehicles, and further, with the approval of

Henry "Murphy" Russell converted title for those vehicles and six others for purposes of

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

transferring the same into the name of J & N Investments. The Whiteheads' actions constituted theft and interfered with Stanford and Sons ability to repay the Wrens' loans by reducing the value of the collateral available for those repayments.

3.42    The Wrens' subsequent investigation establishes that both the six vehicles taken by the Wrens, and the other six vehicles whose title documents were taken by the Whiteheads, were purchased with PCAT money (originally borrowed from the Wrens) and purchased in PCAT's name. The subsequent transfer of titles (as described more fully below) constituted voidable transfers made without reasonably equivalent value received by PCAT, and further, made with the actual intent to hinder, delay and defraud both their personal creditors, and the creditors of PCAT.

3.43    Those same vehicles and title documents were subject to the Wrens' applicable, perfected security agreements and liens, and were owned by the Wrens' following foreclosure of those security interests. Therefore, David Gage Whitehead, in concert with his father Herbert "Butch" Whitehead and Murphy Russell of J & N Investments, converted and stole at least six vehicles that rightfully belonged to PCAT, plus the title documents for six more vehicles rightfully belonging to PCAT.

3.44    In addition to the six vehicles taken on July 16, 2019, David "Gage" Whitehead conspired and acted with his father Butch Whitehead to convert and steal other assets of PCAT, including the 2012 Pontoon boat, its trailer, a 2015 Chevy Duramax truck, and a classic 1977 Ford F150.

3.45    The evidence also shows that David Gage Whitehead converted and stole cash belonging to PCAT, frequently for the benefit of his father Butch Whitehead and mother Jennifer Whitehead. For instance, on or about May 16, 2019, defendant Butch Whitehead caused Stephanie Townsend to issue Check Number 6146 to David Whitehead in the amount of $15,646, which check was deposited in David Gage Whitehead's personal bank account and then disbursed to and for the benefit of his parents by, first, paying $5,611 to Nationstar

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Mortgage for the Whiteheads' Lake Tapps first mortgage, and by writing his father a check for $10,000.00. Plaintiffs' investigation of Stanford and Sons' accounting records discloses no debt owed to David Gage Whitehead for that sum. Instead, as opined by plaintiffs forensic CPA Linda Saunders, this transaction constituted money laundering under RCW 9A.83.020.

### (v)  Defendant Jennifer L Whitehead

3.46    Jennifer L. Whitehead, a defendant in her marital capacity, is an "insider" of PCAT as defined in RCW 19.40.011(8)(b)(vi), and an "insider" of her husband Butch Whitehead under RCW 19.40.011(8)(a)(i). Jennifer L. Whitehead is accordingly liable under that act for the receipt of fraudulent and/or voidable transfers by her marital community.

### (vi)  J & N Investments Inc.

3.47    J & N Investments Inc. is a Washington corporation. The public record indicates that J & N is owned by Henry L. "Murphy" Russell II, along with his wife Victoria Russell and son Jayson Russell. J & N does business under the trade name "Bulldog Auto Sales & Service." J & N supposedly does and or did business in both Snohomish and Pierce County, with the Pierce County location previously being that of Puyallup Car and Truck.

3.48    The evidence, described in more detail elsewhere in this complaint, establishes that defendant Butch Whitehead caused to be transferred from the Wren loan proceeds, in the period from March 2016 through May 2019, $618,844.82 to and for the benefit of J & N Investments, which money was used to pay for J & N's business expenses and other uses, for which transfers no reasonably equivalent value was received by PCAT. On information and belief, based upon the overall pattern of the co-conspirators' fraudulent conduct, those transfers were done with the actual intent to hinder, delay and defraud both PCAT and its creditor, plaintiffs Wren.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

### (vii)    Henry L. "Murphy" Russell II

3.49    Henry L. "Murphy" Russell II is an insider of J & N Investments Inc. due to his ownership interest in that entity.  RCW 19.40.011(8)(b)(vi).  As such, he benefited from the fraudulent and/or voidable transfers from PCAT to J & N.

3.50    In addition to the transfers of PCAT assets received by J & N, PCAT's records show that Henry L. "Murphy" Russell II personally received transfers of $25,000 per month from March 2016 through April 2017, with a $10,000 payment being made early in the month, followed by a $15,000 payment near the end of the month.  In May 2017, Murphy Russell received that "typical" first $10,000 payment, and then $3,000 to pay a credit card bill, at which point payments to Russell appear to have stopped.  At that point Henry L. "Murphy" Russell II had received $363,000 for which he provided no reasonably equivalent value to PCAT.  Based on the evidence discovered during the Pierce County Action, and based upon the overall pattern of co-conspirators' fraudulent conduct, those transfers were done with the actual intent to hinder, delay and defraud both PCAT and its creditor, plaintiffs Wren.

3.51    Based on the repeated, large receipt of PCAT assets both by J & N and by Murphy Russell personally, Murphy Russell must have known of the wrongful conduct of defendant Butch Whitehead, and further, must have knowingly and willingly participated in said scheme.

### (viii)    Victoria L. Russell

3.52    Victoria L. Russell, in her marital capacity, is an "insider" of J & N as defined in RCW 19.40.011(8)(b)(vi), and an "insider" of her husband as defined by RCW 19.40.011(8)(a)(i).  She is accordingly liable under that act for the receipt of fraudulent and/or voidable transfers both by that entity, and due to her marital relationship with Murphy Russell.

ADVERSARY COMPLAINT          - 21

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

     **(b)**     **The Auto Wholesale Enterprise's Pattern of Criminal Profiteering Activity**

3.53    As previously alleged, each of the defendants and named nonparty co-conspirators participated in and/or controlled the conduct of an enterprise that, to the extent legitimate, earned income by buying used automobiles, largely from private sellers and auctions in British Columbia, and then reselling them in Washington state, for the account of Stanford and Sons, LLC, d/b/a Puyallup Car and Truck. Again to the extent legitimate, the business plan was a common one—buy low, sell high, and make a profit off of the difference. That <u>legitimate</u> enterprise is hereinafter referred to as the "Auto <u>Resale</u> Enterprise."

3.54    To the extent that the enterprise was <u>not</u> legitimate, each of the defendants and named nonparty coconspirators (with the exception of PCAT) profited from the conduct of the Auto Resale Enterprise by diverting and converting assets or cash for its, his or her personal use, when said assets or cash should have remained within the control of PCAT for the satisfaction of Stanford and Sons' loan debts to plaintiffs Wren, along with its other legitimate expenses and reasonable profit for its owner, Kenneth Brautigan and his marital community.

3.55    This <u>illegitimate</u> enterprise is hereinafter referred to as the Auto <u>Wholesale</u> Enterprise. The defendants and the named nonparty co-conspirators, again excepting PCAT, profited from the operation of the Auto Wholesale Enterprise as hereinafter described.

     **(i)**     **Defendants Herbert and Jennifer Whitehead**

3.56    The investigation by plaintiffs Wren has revealed that defendants Herbert and Jennifer Whitehead profited from Stanford and Sons, d/b/a PCAT, through a variety of transfers of assets for which reasonably equivalent value was not provided to PCAT, and in numerous instances through criminal conduct that falls within one of the defined acts of "criminal profiteering" set forth in RCW 9A.82.010(4).

3.57    One mechanism by which the Butch Whitehead accomplished this fraudulent purpose was through the manipulation of the procedures used to buy vehicles internationally

ADVERSARY COMPLAINT     - 22

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

from private sellers in British Columbia, Canada.  Stated as simply as reasonably possible, the plaintiffs' investigation has revealed that defendant Butch Whitehead used false "corporate" paperwork fraudulently misrepresenting his status as the owner and president of PCAT (Exhibit 11) as a part of his plan to control PCAT's business activities in British Columbia.  He also obtained control over PCAT's Canadian bank accounts, into which the proceeds of the Wren loans were deposited for purposes of buying inventory for PCAT.  Defendant Butch Whitehead would then travel to British Columbia, contact a private seller of a used car, negotiate a purchase price, and acquire the vehicle.

     3.58    However, in that process he would falsify the price paid through a number of different mechanisms.  In some circumstances he would have a seller sign the sale documentation without having completed the price paid (in Canadian dollars).  Butch Whitehead would then pay the seller the actual price agreed for the transaction, but inflate the price on the documentation, keeping the difference for himself.  In other cases, he indicated on the purchase documentation that the price paid was in US dollars, as opposed to Canadian dollars.  Because of the significant exchange rate differential between these two currencies, that currency fraud amounted to the theft of thousands of dollars (US) per transaction.

     3.59    Plaintiffs Wren identified specific instances of fraud of the types described above by hiring a private investigator in British Columbia, who has worked at locating the sellers of vehicles to PCAT, and then interviewed them to determine the actual prices paid for those vehicles.  Those interviews have revealed a number of instances of fraud of the general types described above, along with incidents where the sellers have determined that their signatures were later forged on sale paperwork to falsely represent the price they were paid.  Those sellers have documented their testimony in affidavits.

     3.60    A summary of these acts of fraud, consisting most fundamentally of the theft of cash concealed through the preparation of fraudulently-prepared documents, is presented in the

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

table below, titled "Stolen Cash." On information and belief, plaintiffs expect that additional such incidents of cash fraud by defendants Whitehead occurred and will be found.

STOLEN CASH

| Date | Stk # | Description | C$ Price Charged to PCAT | C$ Actually Paid | Stolen in C$ | Stolen in US $ | Seller Name |
|------|-------|-------------|--------------------------|------------------|--------------|----------------|-------------|
| 17/11/04 | 6863 | 2011 Ford F150 | $24,000 | $21,000 | $3,000 | $2,350 | Tanya Learn |
| 18/03/15 | 6936 | 2008 Ford F-350 | $25,000 | $22,500 | $2,500 | $1,930 | Zelia Epp |
| 18/04/02 | 6938 | 2006 Ford F-350 | $18,250 | $14,250 | $4,000 | $3,104 | Vince/Lea Martorana |
| 18/07/14 | 6969 | 2003 Dodge Dakota | $6,100 | $4,300 | $1,800 | $1,368 | Jakob Penner |
| 18/08/19 | 6987 | 2009 Ford Ranger | 13,762.57 | $8,500 | $5,263 | $4,029 | Brianna Vogelaar |
| 18/08/31 | 6990 | 2001 Chevy Silverado | $18,000 | $15,000 | $3,000 | $2,309 | Paul Topping |
| 19/02/20 | 7107 | 2005 Ford Mustang | 5,000 | $3,500 | $1,500 | $1,137 | Carmen Prasad |
| 19/04/06 | 7134 | 2009 Dodge Charger | $21,451.53 | $16,000 | $5,452 | $4,071 | Kel-X Direct Services |
| 19/10/20 | 7124 | 2009 Jeep Wrangler | $13,017 | $9,800 | $3,217 | $2,402 | Dawn Stickler |
| 19/10/22 | 7099 | 2006 Ford F-150 | $9,500 | $8,500 | $1,000 | $755 | Jonathan Gray |
| | | | | Totals: | $30,732 | $23,455 | |

3.61    The 2009 Dodge Charger is an example of Butch Whitehead's currency fraud. To explain, the "Wholesale Order" that was typically prepared for British Columbia purchases *atypically* states that the purchase amount paid by PCAT to the seller was for US $16,020 (or C$21,451.53), when per the seller himself it was Canadian $16,000. That fraudulent document change disguised the theft of ~C$ 5,451.53 on the day of sale, which was April 6, 2019.

3.62    The table above details ten separate felonies. Those felonies constitute Theft in the Second Degree, a Class C felony under RCW 9A.56.040. Each of those ten acts of theft also constitutes an act of criminal profiteering as defined by RCW 9A.82.010(4)(e) and are part

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

of a pattern of criminal profiteering as defined in RCW 9A.82.010(12). These willful, intentional acts are nondischargeable under 11 USC §523(a)(2)(A), (a)(4) embezzlement or larceny, and (a)(6).

3.63    In addition to stealing cash from the Canadian vehicle purchase transactions, defendants Butch and Jennifer Whitehead have stolen cash and other items of personal property, either for their personal benefit or for the benefit of their son David Gage Whitehead, that were purchased using PCAT funds and titled in the name of PCAT, Stanford and Sons, or the Wrens. Each of these items of personal property is worth a substantial sum. In addition, on July 18, 2019, after the July 16, 2019 confrontation at PCAT's Puyallup site, defendant Butch Whitehead transferred US cash to PCAT's Canadian account and then withdrew C$1,450 in Canadian currency. Those items presently known to plaintiffs to have been stolen by defendants Butch and Jennifer Whitehead and their co-conspirators are as follows:

| Vin # | Stock # | Description | ACV in US $ |
|-------|---------|-------------|-------------|
| 1GC4K0E83FF5161609 | 7166 | 2015 Chev. Silverado 3500 | $36,584.53 |
| 2BGF09283SLY54302 | 6826 | 1977 Ford F150 | $20,542.55 |
| 59KBU2025H1000756 | 000756 | 2017 Summit Denali | $5,199 |
| PMY76478C212 | 6144 | 2012 Pontoon Boat | $53,265.80 |
| 1L8TCS9MOCA007128 | 6144 | 2012 Boat Trailer | $2,500 |
| J9M93AH837784 | N/A | 1979 Jeep CJ7 | $12,500 |
| 5N1AA08C58N600152 | N/A | 2008 Nissan Armada | $6,500 |
| 1HD1FRW192Y655378 | N/A | 2002 Harley Davidson | $4,500 |
| 1HD1BYB175Y065664 | N/A | 2005 Harley Davidson | $5,000 |
| 2BPSCG7C97V000093 | N/A | 2007 Skidoo | $2,500 |

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

| Vin # | Stock # | Description | ACV in US $ |
|---|---|---|---|
| 1HD1FC4198Y682119 | 76526 | 2008 Harley Davidson | $7,500 |
| 1J4GA39128L583815 | 92254 | 2008 Wrangler | $17,500 |
| 1GKFK13097R141732 | 90099 | 2007 Yukon | $9,500 |
| July 18, 2019 C $1,450 Cash withdrawal from PCAT's BC TD account | N/A | Stolen Cash | $1,112.27 |
| | | Total: | $184,704.15 |

3.64    The table above details fourteen separate felonies.  Five of those felonies constitute Theft in the Second Degree, a Class C felony under RCW 9A.56.040.  The other nine acts of theft, being for over US $5,000, constitutes Theft in the First Degree, which is a Class B felony under RCW 9A.56.030.  Each of those fourteen acts of theft also constitutes an act of criminal profiteering as defined by RCW 9A.82.010(4)(e).  As such, the constituted nondischargeable debts under 11 USC §523(a)(4), embezzlement and larceny.

3.65    The above list includes the 2015 Chevy Silverado, the 2012 Pontoon Boat, and the boat's trailer, which defendant Butch Whitehead now claims are owned by his son David Gage Whitehead.  However, at the time of the theft of those three items neither Herbert Butch Whitehead nor David Gage Whitehead had any colorable claim to title to the same, turning their seizure of those items into three separate acts of theft by each of them, acting in concert with the other, his co-conspirator.

3.66    In addition to the preceding acts of theft, and commencing in March 2016 immediately after PCAT received the initial $1,200,000 loan from plaintiffs Wren, defendant Butch Whitehead caused PCAT to issue him payments in the amount of $10,000 or $12,500 each month through December 2018, and one additional payment for $7,500 in January 2019, even though at no time did he become an employee, or cause to be withheld from his pay the federal income taxes required to be paid.  Instead, exercising the control he had over Stanford and Sons and Stephanie Townsend, he caused those payments to be recorded as an "Other

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Assets" account 1408, titled "Other Investments & Miscellaneous Assets." Again, because of the centrality of the nature of this fraud, plaintiffs emphasize that defendant Butch Whitehead caused this <u>expense</u> to Stanford and Sons to appear as an <u>asset</u> on the Company's Balance Sheet. Thus, when defendant Butch Whitehead caused the June 30, 2016 Balance Sheet for Puyallup Car and Truck (at Audit – 000061) to be printed (on July 19, 2016) and delivered to plaintiffs Wren for their information on how Stanford and Sons was doing, Stanford and Sons' Balance Sheet falsely reflected an asset of $64,000, which was really an expense, which expense did not appear on the Company's Income Statement. (Audit – 000063.) Thus, operating in exactly the opposite manner on that Income Statement, the $64,000 in expenses incurred through June 30, 2016 for the payments to Butch Whitehead did not appear on that financial statement, falsely and materially inflating the Company's income (for the consumption of the Wrens) in the same amount.

3.67    Naturally, again by exercising his control over Stanford and Sons, Butch Whitehead prevented the company from issuing to the IRS the Form 1099s that should have reflected those payments to him. Those Form 1099s would have alerted the IRS to that income and resulted in the Whitehead marital community being taxed upon the same. Plaintiffs allege, based on all the evidence obtained, that this course of conduct was knowing, intentional, and willful, with the expectation that multiple parties would be injured thereby, including plaintiffs Wren and the US Government.

3.68    Through the above machinations, defendant Butch Whitehead extracted $410,000 from PCAT from March 15, 2016, through January 16, 2019. During that same time period, defendant Butch Whitehead's control over the accounting records of Stanford and Sons resulted in the production and distribution of Balance Sheets that falsely represented the existence of an "Other Investments & Miscellaneous Assets" in the same amount of $410,000, while the expenses of the company on its Income Statements were underreported in the same amount. Given the wide-ranging nature of the fraud committed by Butch Whitehead on PCAT,

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

his lack of any ownership interest in the same, and his lack of any formal employment relationship, these payments were not within the range of values that any employer similarly situated to PCAT would have paid to purchase Herbert Whitehead's services. As such, Herbert Whitehead did not provide reasonably equivalent value for the same. Furthermore, given his personal involvement and direction of the scheme that drained PCAT of its funds, those transfers were done with the actual intent to hinder, delay or defraud plaintiffs Wren, by making it impossible for PCAT to repay its loans. Defendant Butch Whitehead's conduct constituted theft, and the corresponding debts should be found nondischargeable under 11 USC 523(a)(2)(A), (a)(4) and (a)(6).

3.69    Furthermore, those series of transfers totaling $410,000 over less than three years would have lead any person in defendant Herbert Whitehead's position to reasonably believe that Stanford and Sons, d/b/a PCAT would be unable to make its loan payments to plaintiffs Wren as they became due.

3.70    One measure of what a reasonable amount of compensation could have been for Butch Whitehead's services was the compensation scheme he proposed in an email dated February 5, 2019, after the defendants and their named nonparty co-conspirators had drained Stanford and Sons of most of its assets, thereby making it impossible to continue the large monthly transfers that had been the routine. Briefly, and in general, Whitehead proposed paying himself a $500 commission on all cars he purchased for Puyallup Car and Truck in Canada. Using that measure, Whitehead was paid $26,750 in commissions in the five month period covering February through June 2019, for an average of $5,350 per month. Applied to the thirty-five month period from March 2016 through January 2019, Butch Whitehead would have been paid $187,250, resulting in overcompensation of $222,750.00.

3.71    However, by inducing Kenneth Brautigan to permit Herbert Whitehead to exercise authority over Stanford and Sons' assets and employees ordinarily reserved for an

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

owner, defendant Herbert "Butch" Whitehead created and assumed to Stanford and Sons, LLC, d/b/a PCAT, a wide variety of fiduciary duties, including but not limited to:

    a.    The duty to deal with PCAT and its actual owner with candor and the utmost good faith;

    b.    The duty of loyalty and care to both the business entity and to the actual member;

    c.    The duty of loyalty to avoid secret profits, self-dealing, and conflicts of interest;

    d.    The duty to avoid self-dealing by refraining from dealing with the business entity on behalf of a party having an interest adverse to the business entity;

    e.    The duty to avoid conflicts of interest in refraining from competing with the business entity; and

    f.    The duty of care to refrain from engaging in grossly negligent conduct, intentional misconduct, and knowing violations of law.

Defendant Herbert "Butch" Whitehead breached all of those fiduciary duties and, by so doing, forfeited under Washington law his right to retain any of the $410,000 he received from PCAT between March 2016 and January 2019, along with any of the buyer commissions (totaling $26,750) received in the period from February 2019 through June 2019.  Furthermore, this series of egregious activities establish that defendant Butch Whitehead committed "actual fraud," within the meaning of 11 USC §523(a)(2)(A), with respect to the loans obtained from plaintiffs Wren due to defendant Whiteheads' materially false representations regarding the financial condition of Stanford and Sons.

        **(ii)**    **Herbert Whitehead, David Whitehead and J & N Investments**

    3.72    David Gage Whitehead, J&N Investments, Murphy Russell and defendant Herbert L. Whitehead III, acting in concert, converted either the title documentation, or both the title documentation and the vehicle itself, of twelve different vehicles that Stanford and

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Sons' records show were purchased in British Columbia by PCAT using PCAT funds. Those conversions, happening on and after July 16, 2019, are listed in the table below:

| Stock # | Vin # | Description | Est Value in US $ | Physical Possession |
|---------|-------|-------------|-------------------|---------------------|
| 7126 | 1J4GA39129L745153 | 2009 Jeep Wrangler | $13,400 | Whitehead |
| 7131 | 1GTHK23224F194426 | 2004 GMC Sierra 2500 | $14,400 | Whitehead |
| 7156 | 1D7RV1CT1BS644298 | 2011 Dodge Ram 1500 | $14,100 | Whitehead |
| 7175 | 1J4FA24137L225697 | 2007 Jeep Wrangler | $9,600 | Whitehead |
| 7179 | 1FDXE45P75HB28253 | 2005 Ford E-450 | $9,500 | Whitehead |
| 7182 | 1FTKR4EE2BPA56039 | 2011 Ford Ranger | $5,300 | Whitehead |
| 7183 | 1GCHK23205F841987 | 2005 Chevy Silverado 2500 | $16,600 | Wren |
| 7187 | 5UXFE4C54AL381196 | 2010 BMW XS | $8,000 | Wren |
| 7196 | 1FTFX1EFXDFA96344 | 2013 Ford F-150 | $12,000 | Wren |
| 7197 | 1C4BJWEG4EL213263 | 2014 Jeep Wrangler | $21,000 | Wren |
| 7198 | 1FTEW1E87AFB19834 | 2010 Ford F-150 | $12,600 | Wren |
| 7068 | 3C6TD5DT9CG231568 | 2012 Dodge Ram 2500 | $13,000 | Wren |
| | | Total: | $149,500 | |

3.73    David Gage Whitehead, J&N Investments, Murphy Russell and defendant Herbert L. Whitehead III, conspired and executed their theft of these vehicles and titles through a complex scheme. First, on July 16, 2019, when plaintiffs Wren were attempting to gather the collateral available as security for the partial repayment of the unpaid loan balances, Gage and Butch Whitehead asserted that Gage, a young man in his early 20s, had purchased the above-referenced vehicles using money from PCAT's bank accounts, using PCAT's name, and using PCAT's import/export clearances, without offering any legitimate explanation for why Gage Whitehead would be exploiting PCAT's company structure and financial resources in such a manner.

3.74    Next, having convinced the Puyallup police who were on the scene that the dispute was a civil matter, the Whiteheads convinced the Wrens to allow them to take six vehicles off the lot, subject to their later proving their contentions to be true. The Wrens' subsequent investigation establishes that both the six vehicles taken by the Wrens, and the other

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

six vehicles whose title documents were taken by the Whiteheads, were purchased with PCAT money (originally borrowed from the Wrens) and purchased in PCAT's name, and that the Whiteheads could not establish any rightful title to said personal property, let alone the superior title that would be needed to overcome the Wrens' rights as secured creditors.

3.75 In the meantime, defendant Butch Whitehead exploited his position of control over PCAT to continue with the fraudulent schemes of the Auto Wholesale Enterprise. Specifically, because the vehicles at issue were purchased in British Columbia, because Butch Whitehead was the individual who purchased those vehicles on behalf of PCAT using PCAT money, Butch Whitehead had physical possession of the original purchase documentation. Defendant Butch Whitehead used his possession of the original documentation to intentionally modify the same to falsely represent that J & N Investments, Inc., had purchased those vehicles, and further, to induce the Washington Department of Licensing to transfer legal title to eleven of twelve of those vehicles into the name of J & N Investments.

3.76 The aforementioned transfers of title documentation for eleven of the twelve vehicles constituted voidable transfers to J & N Investments, made without reasonably equivalent value to PCAT. Those transfers to J & N Investments were, furthermore, made with the actual intent to hinder, delay and defraud both their personal creditors, and the creditors of PCAT, specifically, plaintiffs Wren.

3.77 Each of the aforementioned twelve transfers of title, and six transfers of physical possession constitute theft of property worth in excess of $5,000 each. Thus, these events constitute twelve additional acts of criminal profiteering as defined by RCW 9A.82.010(4)(e) and are nondischargeable under 11 USC §523(a)(2)(A), (a)(4) embezzlement or larceny, and (a)(6).

### (iii) Murphy and Victoria Russell

3.78 Henry L. "Murphy" Russell II is an insider of J & N Investments Inc. due to his ownership interest in that entity. RCW 19.40.011(8)(b)(vi). He was not an owner of PCAT,

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

nor an employee. As an insider of J & N, with no legitimate claim on the assets of PCAT, he benefited from the fraudulent and/or voidable transfers from PCAT to or for the benefit of J & N, which are described here and in the following subsection (iv).

3.79    As an example of the fraudulent transfers directed by defendant Butch Whitehead and the Auto Wholesale Enterprise, over a period of 14 months PCAT paid $25,000 per month to Henry L. "Murphy" Russell II, in two payments each month, one for $10,000 and one for $15,000. The initial payment of $10,000 was made on March 3, 2016, the very first day after the promissory note for $1,200,000 was signed by Stanford and Sons, LLC, and guaranteed by the Brautigans.

3.80    These payments of $25,000 were made at the direction of defendant Butch Whitehead and made out of a payroll account to a payee named "Investment Inc., J&N", with the odd ordering of the words of the payee reflecting the "last name, first name" format of the payroll records in general. When PCAT accounting staff questioned Butch Whitehead regarding the company purpose of those payments, defendant Whitehead responded to the effect that PCAT was paying Murphy Russell for "training." However, the entries on the General Ledger print out of those payments (bates stamped KW 000231-1, and attached hereto as Exhibit 12) generally refer to each bi-monthly payment as a "draw" for the first or second half of the month, as applicable. Murphy Russell was, however, neither an owner nor employee of PCAT, and thus he had no right to receive "draws" of any sort from Stanford and Sons. Furthermore, as another indicator of co-conspirators' fraudulent intent, no IRS forms 1099 or W-2 were issued to Murphy Russell or J&N Investments.

3.81    As is seen from Exhibit 12, these payments for the personal benefit of Murphy Russell continued at the rate of $25,000 per month through April 2017. Then, in May 2017, one additional payment of $10,000 was made on the fifth of the month, again noted as a "draw" per the typical "Description" entries, and then one final payment in this GL account for $3,000, on May 12, 2017, for $3,000, described as "Cabela's CC Reimbursement—Per Butch." The

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

grand total of these transfers for the direct benefit of Murphy Russell and his marital

community was $363,000 in a period covering less than fifteen months.

3.82    There is no evidence of any legitimate "training" services being provided by

Murphy Russell to any owner or employee of PCAT.  Further, $25,000 per month for 14-plus

months is not within the range of values that any business, similarly situated to PCAT in the

used car business, would pay for any training services in an arm's length transaction at market

rates.

3.83    In sum, Murphy Russell, individually, along with the marital community of

Murphy and Victoria Russell did not provide reasonably equivalent value for the payments

received from PCAT.  Furthermore, the fact that defendant Butch Whitehead directed that these

absurd payments be made to Murphy Russell demonstrates the co-conspirators' actual intent to

hinder, delay and defraud both PCAT and ultimately PCAT's creditor, plaintiffs Wren.

3.84    Compounding the fraudulent nature of these transactions, defendant Butch

Whitehead caused these payments to Murphy Russell to be recorded on Stanford and Sons'

Balance Sheet as a Receivable under Account 110501, "Payroll Advance Receivable," rather

than as an expense on the Income Statement. In other words, just like the fraudulently

concealed payments to Butch Whitehead, the payments to Murphy Russell were concealed as a

loan appearing as an asset on Stanford and Sons' Balance Sheet, and not as an expense within

Stanford and Sons' Income Statement.  So, referring back to PCAT's June 30, 2016 Balance

Sheet, the total of the intentionally-misrepresented Account 110501, "Payroll Advance

Receivable" for Murphy Russell plus intentionally-misrepresented Account 1408, "Other

Investments & Miscellaneous Assets" for Butch Whitehead exceeds the total reported "Net

Income" of $94,628.58.

3.85    Put differently, defendant Butch Whitehead was falsely representing to plaintiffs

Wren that Stanford and Sons was profitable when, in reality, it was losing money.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

3.86     Based on his repeated, large receipt of PCAT assets, Murphy Russell must have knowingly joined in the criminal conduct of Butch Whitehead, and further, must have knowingly and willingly participated in said scheme with the intent or expectation that PCAT would incur debts beyond its ability to pay as they became due.  Accordingly, this stream of payments to Russell contains 30 separate acts of criminal profiteering, as defined by RCW 9A.82.010(4)(e), totaling $363,000.00.  Defendant Butch Whitehead is jointly and severally liable for this debt, which debt is nondischargeable under 11 USC §523(a)(2)(A), (a)(4) embezzlement or larceny, and (a)(6).

**(iv)     Duward William Frame, IV and the Theft of a 2011 Ford**

3.87     Duward William Frame, IV is the boyfriend of defendant Whitehead's daughter. Frame took physical possession of a 2011 Ford Taurus, VIN No. 1FAHP2DW6BG111662, which vehicle was legally owned by Puyallup Car and Truck, by completing a "Dealer's Permit for Demonstration" on July 12, 2019.  After its default on the Wren loans and the initial July 16, 2019 confrontations with defendant Butch Whitehead and Gage Whitehead, Stanford and Sons demanded that Frame return the 2011 Ford Taurus.  (Exhibit 13, KW 000384 – 387-1.) Frame refused, claiming that he no longer had possession of the same.  While Frame initially refused to say who he supposedly gave that vehicle to, subsequent discovery, and defendant Butch Whitehead's own admissions, established that Whitehead was the individual who took possession of that vehicle without permission of Stanford and Sons.

3.88     PCAT paid $9,100 at auction for that Ford Taurus, which sum was paid via a secured flooring loan from an entity known as NextGear.  Because neither Brautigan nor Stanford and Sons had the funds to pay NextGear, plaintiffs Wren ultimately were required to pay the debt to NextGear.

3.89     After the Pierce County Action was commenced, defendant Butch Whitehead returned the 2011 Ford Taurus to plaintiffs Wren.  Notwithstanding that return, following a summary judgment hearing on September 17, 2021, the Pierce County Superior Court held that

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Frame had converted that 2011 Ford Taurus, and that defendant Butch Whitehead had committed two predicate acts under RCW 9A.82.100, specifically RCW 9A.82.010(4)(e) and RCW 9A.82.010(4)(pp). Defendant Whitehead's liability for these actions is nondischargeable, not only under 11 USC §523(a)(4) for his larceny and/or embezzlement, but also under 11 USC §523(a)(2)(A) and (a)(6) due to the willfulness, and actual fraud, of his conduct. The actual amount of those damages will be determined at trial but are here alleged to be the original purchase price of the vehicle, i.e., $9,100.

### (v)    J & N Investments Inc.

3.90    During the same time period that Murphy and Victoria Russell received $363,000 in fraudulent transfers from PCAT, J & N Investments also received fraudulent transfers of PCAT assets equaling at least $618,844.82.

3.91    As set forth in the table below, defendant Butch Whitehead, exercising his position of control over PCAT, caused that company to make payments to or for the benefit of J & N and the entire Auto Wholesale Enterprise. Those fraudulent transfers of assets included direct payments from PCAT to the creditors of J & N, as well as payments to J & N "reimbursing" that company for that company's payment of its own expenses. Based on the various descriptions of these payments, the defendants and the named nonparty co-conspirators caused PCAT to pay for virtually every type of expense that J & N incurred during its operations.

**Amounts Paid to or for the Benefit of J & N Investments, LLC**

| Date | Ck # | Paid To | Description | Amount |
|------|------|---------|-------------|--------|
| 03/18/16 | 10036 | J&N | Payroll Reimbursement | $4,414.85 |
| 04/12/16 | 10196 | J&N | Payables Reimbursement | $11,643.54 |
| 06/14/16 | 10671 | J&N | Partial June 2016 Service Reimbursement | $10,000.00 |
| 06/14/16 | 10679 | J&N | June 2016 Remaining Balance Service Reimbursement | $2,081.97 |
| 07/15/16 | 10953 | J&N | Partial July Reimbursements | $10,000.00 |
| 07/26/16 | 11070 | J&N | Invoice #2016-0619 less Stock No. 110 | $2,569.65 |
| 09/26/16 | 11535 | J&N | Lot Check Expense | $95.00 |

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

| Date | Ck # | Paid To | Description | Amount |
|---|---|---|---|---|
| 10/10/16 | 11626 | J&N | Lot Check Expense | $95.00 |
| 11/21/16 | 11906 | J&N | Auction Lot Check Expense | $95.00 |
| 11/28/16 | 11930 | J&N | Lot Check Expense | $95.00 |
| 02/14/17 | 12421 | J&N | Credit Card Payments | $5,000.00 |
| 02/14/17 | 12422 | J&N | Auction Lot Check Fee | $95.00 |
| 03/02/17 | 12533 | J&N | Credit Card Payment less Rent Overpayment | $1,005.90 |
| 03/07/17 | 12559 | J&N | Serv Exp – CC Reimbursement | $1,962.56 |
| 03/21/17 | 12669 | J&N | Cabela's Card Payment | $5,000.00 |
| 04/03/17 | 12722 | J&N | February 2017 B&O Tax | $1,754.92 |
| 04/18/17 | 12786 | J&N | Cabela's CC Reimbursement – Serv Dept. | $8,000.00 |
| 04/24/17 | 12826 | J&N | March 2017 B&O Tax | $1,300.74 |
| 05/25/17 | 12985 | J&N | April 2017 Tax Reimbursement | $375.00 |
| 04/01/16 | 10121 | Long Dog LLC | April Rent – Serv Dept. | $5,891.90 |
| 03/16 – 05/17 | | Bulldog Auto Sales | Rent, Payroll Reimbursement, Serv Dept., NNNs | $106,957.41 |
| 05/16 – 02/17 | | Bulldog Auto Sales | Reimbursements, Office Expenses, Rent, NNNs | $220,079.29 |
| 06/16 – 04/17 | | Universal Premium | Fuel Payment, Payment on Account | $24,260.92 |
| 06/16 – 02/17 | | Capital Premium | Insurance Premiums | $17,519.21 |
| 05/16 – 01/17 | | Progressive | Insurance Premiums | $9,074.12 |
| 03/16 – 04/17 | | Frontier Comm. | On Account | $2,038.15 |
| 05/16 – 04/17 | | City of Marysville | Dumpster billing, on account | $4,915.34 |
| 03/17 – 05/17 | | Angela Fitts | Office/Accounting Services | $4,369.00 |
| 04/17 – 05/17 | | Sound Accounting | On Account | $773.44 |
| 2016 | | Various employees | Summary of Payroll Paid to Employees of J&N | $90,979.50 |
| 2017 | | Various employees | Summary of Payroll Paid to Employees of J&N | $51,354.82 |
| 06/22/16 | | MTC | Geotech Engineering & Consulting | $1,760.00 |
| 03/16/17 | | Sprint | | $336.61 |
| 05/19/16 | | Franks Field Service | Truck Repair | $5,407.71 |
| 08/24/16 | | Bank of America | On Account | $295.75 |

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

| Date | Ck # | Paid To | Description | Amount |
|------|------|---------|-------------|--------|
| 08/29/16 | | Cabela's Visa | On Account | $4,554.15 |
| 08/11/16 | | Banner Bank | On Account | $45.00 |
| 08/11/16 | | First Bankcard | On Account | $1,151.54 |
| 08/24/16 | | Card Services | On Account | $1,060.44 |
| 08/11/16 | | Best Buy Credit Svs | On Account | $436.39 |
| | | | | $618,844.82 |

3.92    As seen from the table above, PCAT paid J & N's expenses for J & N's own employees, for the cost to rent J & N's business premises, for general office expenses, for fuel for J & N's vehicles, for the maintenance costs for J & N's vehicles, for the cost of inventory audits by J & N's own floor financier, for J & N's Business and Occupation taxes, for other miscellaneous tax expenses, business auto and general liability insurance expenses, telephone and internet charges, and even the utility charges owed by J & N to the City of Marysville.

3.93    In short, defendant Butch Whitehead, with the active participation of the other named nonparty co-conspirators, most notably here Russell and J & N itself, made PCAT pay at least $618,844.82 to cover a vast array of J & N's business expenses of J & N in the period from March 2016 through May 2017, for which expenses Stanford and Sons had no liability. By doing so, the defendants and named nonparty co-conspirators violated RCW 9A.82.080, prohibiting the use of proceeds of criminal profiteering to control an enterprise, namely the "J & N Investments Enterprise."

3.94    In addition to violating Washington's Criminal Profiteering Acts, the foregoing transfers constituted transfers made without reasonably equivalent value because nothing of value was provided in exchange for PCAT's payment of J & N's obligations to both private and public entities.  Furthermore, the circumstances of these innumerable transfers leads to the unavoidable conclusion that they were made with the actual intent to hinder, delay or defraud

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

both the Wrens and Stanford and Sons, LLC, and thus are nondischargeable under 11 USC 523(a)(2)(A), (a)(4) and (a)(6).

**C.      Overall Single Damages from Fraudulent Conveyances/Criminal Profiteering to Stanford and Sons, LLC and its Creditors Kenneth and Alice Wren**

3.95     As previously alleged, state debtor Stanford and Sons has assigned its causes of action against defendants Whitehead as a part of Stanford and Son's efforts to satisfy its contractual obligations to plaintiffs Kenneth and Alice Wren.  In re Mark E. Phillips, 2016 WL 7383964, *2 (US BAP 9th Cir. 2016).

3.96     The single damages caused to Stanford and Sons, LLC and plaintiffs Wren are summarized below and estimated to equal $1,785,353.97:

| Description | Amount |
|---|---|
| Stolen Cash from Canadian Car Sales (Complaint ¶3.60) | $23,455.00 |
| Stolen Vehicles, Boat, Trailer and Cash (Complaint ¶3.63) | $184,704.15 |
| Fraudulent Transfers to Butch Whitehead (Complaint ¶¶3.68-3.71) | $436,750.00 |
| Conversion of title documents for 12 vehicles, plus 6 of the vehicles themselves (Complaint ¶3.72) | $149,500.00 |
| Fraudulent Transfers to Murphy Russell (Complaint ¶¶3.50, 3.81, 3.86, 3.90) | $363,000.00 |
| Conversion of 2011 Ford Taurus (Complaint ¶¶3.88-.89) | $9,100.00 |
| Fraudulent Transfers to J & N Investments (Complaint ¶¶3.48, 3.90-93) | $618,844.82 |
| Total: | $1,785,353.97 |

3.97     The fact that the total of these estimated damages is roughly equivalent to the $1,700,000 in loans provided by plaintiffs Wren to Stanford and Sons is not purely coincidental, as the fundamental aim of the Auto Wholesale Enterprise and J & N Investments Enterprise was to drain Stanford and Sons of its assets, to the benefit of the co-conspirators.

3.98     Through those wrongful actions, the defendants and named nonparty co-conspirators rendered Stanford and Sons incapable of paying its debts when they became due, which most importantly here included the $1,200,000 and the $500,000 loans.  At the time of that default, the unpaid balance of those loans was $1,187,872.89, plus interest, fees, expenses

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

and costs. That liability was confirmed by the Pierce County Superior Court's Order on Summary Judgment filed October 4, 2021.

3.99    Accordingly, plaintiffs Wren, Stanford and Sons, LLC, and the Brautigans were all victims of the Auto Wholesale Enterprise. Plaintiffs Wren are entitled to recovery a nondischargeable judgment under 11 USC 523(a)(2)(A), (a)(4) and (a)(6) in an amount to be proven at trial but here alleged to be at least $1,785,353.97.

## IV.    CAUSES OF ACTION

**A.    Cause of Action No. 1:  Liability Under 11 USC §523(a)(2)(A) and (a)(6) for Fraudulently Inducing Plaintiffs Wren to Make $1,700,000 in Loans to Stanford and Sons**

Plaintiffs Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 3.99 as if restated herein in full.

4.1    The term "actual fraud," as used in the discharge exception in §523(a)(2)(A) for debts obtained by false pretenses, a false representation, or actual fraud, encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation. Husky Intern. Electronics, Inc. v. Ritz, 578 U.S. 356, 359 (2016).

4.2    Debtors who make false representations under the discharge exception for debts obtained by false pretenses, a false representation, or actual fraud can also inflict "willful and malicious injury," whether or not that injury is a result of fraud. 11 U.S.C.A. § 523(a)(6). Husky Intern., 578 U.S. at p. 363. An act is "willful and malicious" when done intentionally and the act necessarily produces harm and is without just cause or excuse. The act may be "willful and malicious" even absent proof of specific intent to injure. In re Saylor, 108 F.3rd 219, 220-221 (9th Cir., 1997). Put differently, even if defendant Whitehead argues that he intended to have Stanford and Sons pay back the Wrens' loans, his intentional acts of misrepresentation and omission were without just cause or excuse and resulted in the Wrens' injuries, making the debt nondischargeable under 11 U.S.C.A. § 523(a)(6).

4.3    Even though false representations or omissions to a creditor are not required for

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

entry of a nondischargeable judgment under either §523(a)(2)(A) or 11 U.S.C.A. § 523(a)(6), the conduct of defendant Herbert L. Whitehead III fulfilled each of the nine elements of fraud under Washington law, to wit, (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages.  Indeed, all of these elements are fulfilled (a) for the original March 2016 loan of $1,200,000, (b) the second February 2017 loan of $500,000, and (c), the January 2018 refinancing of the initial $1,200,000 loan.

4.4     For instance, defendant Whitehead prepared and presented the Pro Forma package, relevant portions of which are attached hereto as Exhibit 14.  That Pro Forma package significantly overstated income from the beginning and understated the liabilities that Stanford and Sons had as of January 15, 2016.  As an example, the financial statements contained within the Pro Forma package failed to disclose that as of January 15, 2016, Stanford and Sons owed Robert (Bob) Graham $375,000 on a promissory note that was not disclosed.  Those financial statements further failed to disclose that Stanford and Sons was paying Robert Graham interest-only monthly payments of $3,125.

4.5     Defendant Butch Whitehead knew about these liabilities to Robert Graham at the time he prepared and presented the Pro Forma package to plaintiff Kenneth Wren.  Indeed, Robert Graham appears as one of Whitehead's personal creditors in this bankruptcy.  The failure to disclose these liabilities was material because, for instance, he failed to reveal Stanford and Sons' true debt load.  It was also material to the actual performance of Stanford and Sons because, for instance, the unrecorded interest-only payments made in 2016 wiped out the "Actual Net Profit" of $36,000 that the company supposedly made, as was ultimately reported in 2018 by CPA Norm Smith on the Brautigan's 2016 tax return.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

4.6.    The Stanford and Sons Pro Forma plans, as proposed to Kenny Wren, were to take on a retail segment of business.  These plans were overshadowed by defendant Butch Whitehead's undisclosed plan to also include colleague Henry L. (Murphy) Russell II and his company J&N Investments, Inc., as a recipient of the "expected future profits" from this expansion. From March 1, 2016, defendant Butch Whitehead had convinced Ken Brautigan that he and Brautigan could each take $10,000 to $12,500 a month "profit draws," and they could team up with J&N to make this expansion a "joint venture" with Murphy Russell, who would receive $25,000 a month in such future profit draws.

4.7    Given that these "future profit draws" of ~$50,000 a month started immediately upon receipt of the Wrens' $1,200,000 loan, defendant Butch Whitehead clearly acted intentionally when he failed to disclose the same to the Wrens.  And predictably, these unearned profit payments had a dramatic impact on the profitability of Stanford and Sons, which had projected profits of $521,520 for 2016.  (Exhibit 14, p. 4.)  Instead, as indicated, CPA Norm Smith ultimately calculated that Stanford and Sons had earned an actual net profit of $36,000, but even that figure failed to take into account the undisclosed annual interest payments of $37,500 per year made to Robert Graham.

4.8    All of the foregoing establishes that defendant Butch Whitehead, in support of the application for the March 2016 $1,200,000 Wren loan (1) made representations of existing facts; (2) that the facts were material to the predictable performance of Stanford and Sons; (3) that the facts were false; (4) that defendant Butch Whitehead knew the facts were false; (5) that defendant Butch Whitehead intended plaintiffs Wren to act on those facts because he both prepared and decided what would and would not be presented to the Wrens for their consideration; (6) plaintiffs Wren did not know these facts were false; (7) the plaintiffs relied on the truth of the facts as represented; (8) plaintiffs Wren had the right to rely on those facts, and in fact were both justified in doing so and did so reasonably; and (9) the Wrens were

Law Offices of
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  damaged because defendant Butch Whitehead's conduct induced the Wrens to make loans that

2  would not have been made and caused Stanford and Sons to be unable to repay the loan.

3      4.9     As previously alleged, with respect to the February 2017 loan of $500,000,

4  defendant Butch Whitehead controlled the financial operations of Stanford and Sons and

5  caused the payments made to him, and to Murphy Russell, to be recorded on the Balance Sheet

6  of Stanford and Sons as <u>assets</u> when they were in fact <u>expenses</u> that should have been recorded

7  on the company's Income Statement.  A copy of the Balance Sheet and Income Statement for

8  November 2016, printed in December 2016 and provided to plaintiffs Wren prior to the

9  February 2017 loan for $500,000 is attached hereto as Exhibit 15.  If defendant Butch

10  Whitehead had fully and honestly disclosed the payments made to himself, to Murphy Russell

11  and to Robert Graham, the $201,515.01 in "Net Income" falsely reported on those statements

12  would have been wiped out and replaced with a significant loss.

13     4.10    Yet, Butch Whitehead intentionally did the opposite for the purpose of

14  misleading the Wrens, who were in fact misled in their both justifiable and reasonable reliance

15  on Butch Whitehead's representations and omissions, who made the same as a controlling

16  insider of Stanford and Sons, and for the purpose of inducing the Wrens not only to loan an

17  additional $500,000, but to continue the overall lender/debtor relationship.

18     4.11    This pattern of intentional deception continued with the refinancing of the

19  original $1,200,000 loan, as is shown by the materially-false financial statements attached

20  hereto as Exhibit 16 for year-end 2016, and for the first six months of 2017, as printed and then

21  delivered by Butch Whitehead to the Wrens on August 1, 2017.  Again, all of these fraudulent

22  misrepresentations and omissions by defendant Butch Whitehead were (1) representations of

23  existing facts; (2) the facts were material to the predictable performance of Stanford and Sons;

24  (3) the facts were false; (4) defendant Butch Whitehead knew the facts were false; (5)

25  defendant Butch Whitehead intended plaintiffs Wren to act on those facts because he both

26  prepared and decided what would and would not be presented to the Wrens for their

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

consideration; (6) plaintiffs Wren did not know these facts were false; (7) the plaintiffs relied on the truth of the facts as represented; (8) plaintiffs Wren had the right to rely on those facts, and in fact were both justified in doing so and did so reasonably; and (9) the Wrens were damaged because defendant Butch Whitehead's conduct induced the Wrens to make loans that would not have been made and caused Stanford and Sons to be unable to repay those loans.

4.12     Plaintiffs have been damaged by the actually fraudulent, willful and malicious conduct of defendants Whitehead.  As such, defendants Whitehead are liable under both §523(a)(2)(A) and §523(a)(6) for the unpaid principal, interest and late fees, totaling $1,187,872.89 as of August 1, 2019, plus post-judgment interest accruing at the rate of 16% per annum, fees and costs.  Because of the ongoing accrual of liability on that debt, the exact amount owed by defendants Whitehead will be proven at trial.

**B**     **Cause of Action No. 2:  Liability Under 11 USC §523(a)(2)(A), (a)(4) and (a)(6) of Fraudulent or Voidable Transfers from Defendants and Named Nonparties as Initial and Subsequent Transferees under RCW Ch. 19.40**

Plaintiffs Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 4.12 as if restated herein in full.

4.13     As previously observed, a debtor can be subject to nondischargeable judgments arising from fraudulent conveyances under either or both 11 USC §523(a)(2)(A) and (a)(6). Husky Intern. Electronics, Inc. v. Ritz, 578 U.S. 356, 359 (2016).  Fraudulent conveyances are also recoverable under 11 USC §523(a)(4) as embezzlement, if the debtor originally had possession of the property with permission, and as larceny, if without permission.  *See* In re Mark E. Phillips, 2016 WL 7383964, pp.*2, 5 (US BAP 9th Cir. 2016) and the wide range of transfers of that company insider found to be nondischargeable on the grounds of embezzlement.

4.14     As alleged both here and in the Pierce County Action, the Uniform Fraudulent Transfer Act, RCW 19.40 et seq., for transfers made before July 23, 2017, and the Uniform Voidable Transactions Act, also as codified at RCW Ch. 19.40 et seq., for transfers made on or

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

after July 23, 2017, apply here.  As of the time of the filing of this adversary complaint, the amendments made to RCW Ch. 19.40 et seq. have no material impact on the recovery of the particular transfers or transactions at issue.

4.15    Stanford and Sons' transfer of assets, which were caused and directed by defendant Herbert L. "Butch" Whitehead III, a member of defendant Whitehead Marital community, to defendant Herbert Whitehead himself, to the marital community of Herbert and Jennifer Whitehead, to his son David "Gage" Whitehead, to their co-conspirator Henry L. "Murphy" Russell II, to the marital community of Henry and Victoria Russell, and to their co-conspirator J & N Investments Inc., were done for the benefit of each of the aforesaid defendants and named nonparty co-conspirators, as well as for the Auto Wholesale Enterprise as a whole, of which enterprise each of the defendants and named nonparty co-conspirators was a member.

4.16    Those transfers constituted fraudulent transfers, or alternatively voidable transactions, under RCW 19.40.041 because defendant Butch Whitehead caused Stanford and Sons to make the transfers or incurred the obligations (1) with actual intent to hinder, delay, or defraud plaintiffs Wren, a creditor of Stanford and Sons, as well as Stanford and Sons itself, of which these defendants are debtors; and/or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and at the time of each of the aforesaid transfers or transactions Stanford and Sons (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of Stanford and Sons were unreasonably small in relation to the business or transaction; and/or (ii) that defendants intended to incur, or believed or reasonably should have believed that Stanford and Sons would incur, debts beyond Stanford and Sons' ability to pay as they became due.

4.17    Proof of said actual intent or reasonable belief is seen, in part, by the extensive, wide ranging and large size of the transfers of Stanford and Sons' assets, as orchestrated, directed and retained by defendant Butch Whitehead, for the benefit of the Auto Wholesale

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

Enterprise, the J & N Investments Enterprise, and their individual members, which members include David Gage Whitehead, the Russells and J & N, which as stated is also a RCW 9A.82 criminal enterprise. Additional relevant facts, as delineated in RCW 19.40.041(b) or .041(2), are pled above, and include the facts that defendants Whitehead and the named nonparty co-conspirators concealed the theft of cash through fraudulent documentation, obtained and retained physical possession of assets of Stanford and Sons, such as the boat, trailer and trucks identified in ¶3.63 of the complaint, and transferred over a relatively short period of time a sum of money that exceeded the $1,700,000 loans made by plaintiffs Wren to debtor Stanford and Sons.

4.18    Stanford and Sons' transfers to defendants Whitehead, Russell and J & N Investments constituted fraudulent transfers, or voidable transactions, under RCW 19.40.051(a), and .051(1), because the transfers were made, or the obligations were incurred by, Stanford and Sons without receiving a reasonably equivalent value in exchange for the transfers or obligations, and Stanford and Sons was either insolvent at that time or became insolvent as a result of those transfers or obligations.

4.19    Based on the evidence of record, including Butch Whitehead's written statement of July 29, 2019, and David G. Whitehead's written statement of August 8, 2019, the transfers of Stanford and Sons' assets, as detailed in ¶¶ 3.63 & 3.72, to defendants Whitehead constituted voidable transfers under RCW 19.40.051(2) because the transfers were made to insiders of Stanford and Sons, namely the Whiteheads, for an alleged antecedent debt, namely the sums allegedly advanced by David G. Whitehead and/or Herbert "Butch" Whitehead toward the purchase of inventory and other personal property (such as the Pontoon boat); Stanford and Sons was insolvent at the time of the transfers; and defendants and their named nonparty co-conspirators had reasonable cause not only to believe but to know that Stanford and Sons was insolvent because Stanford and Sons had already defaulted on its $1,700,000 in loans from plaintiffs Wren when defendants Whitehead absconded with said property.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

4.20 As the aforementioned transfers of Stanford and Sons' assets and property are voidable under RCW 19.40.071, plaintiffs Wren are entitled to avoidance of the transfers pursuant to the same in an amount to be proven at trial but alleged here to be $1,785,353.97, and/or they are entitled to recover the proceeds or a judgment for the value of the assets transferred against the first transferee and any subsequent transferee, including defendants Whitehead, Russell, J & N Investments, Southwest Enterprises, LLC, Mt. View Enterprises, LLC, Whitehead Consulting, LLC, and Whitehead Enterprises, LLC pursuant to RCW 19.40.071 or RCW 19.40.081. All of the above are, furthermore, nondischargeable under §523(a)(2)(A) actual fraud, (a)(4) embezzlement and/or larceny, and (a)(6) willful and malicious injury, because the transfers constituted actual fraud, because they constituted acts of criminal theft, and because they constituted a willful and malicious injury to plaintiffs Wren both in their individual capacities and in their capacity as assignee of Stanford and Sons.

**C.   Cause of Action 3:  For a Nondischargeable Judgment of Replevin Under §523(a)(2)(A), (a)(4) and (a)(6) Requiring the Return of Plaintiffs' Personal Property, or the Value Thereof**

Plaintiffs Kenneth and Alice Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 4.20 as if restated herein in full.

4.21 Plaintiffs Kenneth and Alice Wren are the legal owners of the following items. The far-right column of the table below indicates who had physical possession of the vehicle at the time of S&S's default, or with respect to the Yukon, the location of the cash proceeds following sale and deposit pursuant to a state court order. The location of the Skidoo is presently unknown to the plaintiffs, since it is not listed as an asset of the estate, but defendants Whitehead are believed to have been in possession of the same.

| Vin # | Description | Est. ACV in US $ | Physical Possession |
|-------|-------------|------------------|---------------------|
| J9M93AH837784 | 1979 Jeep CJ7 | $12,500 | Whitehead |
| 5N1AA08C58N600152 | 2008 Nissan Armada | $6,500 | Whitehead |

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

| Vin # | Description | Est. ACV in US $ | Physical Possession |
|---|---|---|---|
| 1HD1FRW192Y655378 | 2002 Harley Davidson | $4,500 | Whitehead |
| 1HD1BYB175Y065664 | 2005 Harley Davidson | $5,000 | Whitehead |
| 2BPSCG7C97V000093 | 2007 Skidoo | $2,500 | Whitehead |
| 1HD1FC4198Y682119 | 2008 Harley Davidson | $7,500 | Whitehead |
| 1J4GA39128L583815 | 2008 Wrangler | $17,500 | Whitehead |
| 1GKFK13097R141732 | 2007 Yukon | $8,705 | Pierce County Sup. Court Registry |
| | | $64,705.00 | |

4.22    With the exception of the cash proceeds from the sale of the 2007 Yukon, defendants Whitehead wrongly retain physical possession and control of the above-identified vehicles.  Plaintiffs are lawfully entitled to possession of the same. Because they have no title or right to possession of the same, they are subject to a nondischargeable judgment for embezzlement or larceny under §523(a)(4).  That judgment should direct the return of those items in the possession or control of defendants Whitehead pursuant to RCW Ch. 7.64 and the inherent power of this Court, along with payment of the value of those items no longer in defendants' possession.

4.23    Defendants Whitehead are also subject to nondischargeable judgments to the extent that the facts establish that, for instance, they have destroyed, transferred and/or spent the assets subject to an order of Pierce County Superior Court.  By way of example, the 2007 Skidoo was the subject of orders entered in that state court, and the whereabouts of either the item or its cash proceeds are not accounted for.

**D.    Cause of Action No. 4:        Fraud, Theft; Malicious Injury**

Plaintiffs Kenneth and Alice Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 4.23 as if restated herein in full.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

4.24   Through their unlawful conspiracy, defendants stole, fraudulent conveyed and/or were unjustly enriched by an amount to be proven at trial but here alleged to be $1,785,353.97, as follows:

| Description | Amount |
| --- | --- |
| Stolen Cash from Canadian Car Sales (Complaint ¶3.60) | $23,455.00 |
| Stolen Vehicles, Boat, Trailer and Cash (Complaint ¶3.63) | $184,704.15 |
| Fraudulent Transfers to Butch Whitehead (Complaint ¶¶3.68-3.71) | $436,750.00 |
| Conversion of title documents for 12 vehicles, plus 6 of the vehicles themselves (Complaint ¶3.72) | $149,500.00 |
| Fraudulent Transfers to Murphy Russell (Complaint ¶3.50, 3.81, 3.86, 3.90) | $363,000.00 |
| Conversion of the 2011 Ford Taurus (Complaint ¶¶3.88-.89) | $9,100.00 |
| Fraudulent Transfers to J & N Investments (Complaint ¶¶3.48, 3.90-93) | $618,844.82 |
| Total: | $1,785,353.97 |

Defendants Whitehead are jointly and severally liable for the same.

4.25   Plaintiffs, both in their individual capacity and as assignees of Stanford and Sons, and were injured by defendants' wrongful conduct.  The damages arose from the actual fraud, embezzlement, larceny and willful and malicious actions of defendants Whitehead. Plaintiffs are therefore entitled to a nondischargeable judgment against defendants Whitehead in an amount to be proven at trial but here alleged to be for $1,785,353.97, pursuant to 11 USC §523(a)(2)(A), (a)(4) and (a)(6).  Because they conspired with the named nonparties to steal and wrongly obtain these funds and personal property, defendants Whitehead are jointly and severally liable for the same, even if one of the other named nonparty co-conspirators was the direct beneficiary of a particular conversion of funds or property.

**E.     Cause of Action No. 5:      The Facts of Herbert Whitehead's Breach of Fiduciary Duties Constitute a Nondischargeable Debt Under §523(a)(4)**

Plaintiffs Kenneth and Alice Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 4.25 as if restated herein in full.

4.26   By inducing Kenneth Brautigan to permit Herbert Whitehead to exercise authority over Stanford and Sons' assets and employees that is ordinarily reserved for an

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

owner, defendant Herbert "Butch" Whitehead created and assumed to Stanford and Sons, LLC, d/b/a PCAT, a wide variety of fiduciary duties, including but not limited to:

a. The duty to deal with PCAT and its actual owner with candor and the utmost good faith;

b. The duty of loyalty and care to both the business entity and to the actual member;

c. The duty of loyalty to avoid secret profits, self-dealing, and conflicts of interest;

d. The duty to avoid self-dealing by refraining from dealing with the business entity on behalf of a party having an interest adverse to the business entity;

e. The duty to avoid conflicts of interest in refraining from competing with the business entity; and

f. The duty of care to refrain from engaging in grossly negligent conduct, intentional misconduct, and knowing violations of law.

4.27    While a breach of state fiduciary duties is not necessarily nondischargeable under the various provisions of 11 USC §523(a)(2) to (6), the same conduct that can give rise to the violation of such a state duty can be nondischargeable.  The case of In re Mark E. Phillips, 2016 WL 7383964 (US BAP 9th Cir. 2016), which arose in Washington and thus was decided to some extent by reference to Washington law, is a good example of this.  For instance, in that case there were series of state law findings of fact and conclusions of law related to debtor Phillips, which included findings that the debtor acted in bad faith in a number of unauthorized transactions, that there were no business justification for a number of those transactions, that there were no records justifying "consulting fees" paid to the debtor, that the debtor failed to keep accurate company financial records, that the debtor engaged in related-party transactions without corporate authorization, that the debtor caused the company to make improper payments to the debtor, that the debtor caused the company to pay the debtor's personal obligations, and that the debtor failed to ensure that loan payments were repaid, all of which

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

have close factual parallels to the case a bar.  The <u>Phillips</u> court then upheld a summary judgment ruling that the debts were nondischargeable as §523(a)(4) embezzlement debts.

4.28    Thus, as with Mark Phillips, plaintiffs contend that defendant Herbert "Butch" Whitehead's actions, which breached his fiduciary duties to Stanford and Sons, created a nondischargeable debt under at least §523(a)(4).  The exact amount of that liability will be proven at trial, but plaintiffs contend that it should include a forfeiture of his right to retain any of the $436,750 he received from PCAT between March 2016 and June 2019.

4.29    Based on Stanford and Sons' assignment of all of its causes of action to plaintiffs, plaintiffs are entitled to recover these $436,750 in damages flowing from Butch Whitehead' breach of fiduciary duties.

**F.    Cause of Action No. 6:        Fraud and Theft in Violation of RCW Chapter 9A.82 Are Nondischargeable Debts under §523(a)(2)(A), (4) and (6)**

Plaintiffs Kenneth and Alice Wren, both personally and as assignees of Stanford and Sons, reallege paragraphs 1.1 through 4.29 as if restated herein in full.

4.30    The constituent members of the Auto Wholesale Enterprise are Herbert L. Whitehead III, the marital community of Herbert L. and Jennifer L. Whitehead, David G. Whitehead, Henry L. Russell II, the marital community of Henry and Victoria Russell, and J & N Investment Inc.  Stanford and Sons, LLC, is the entity used by said constituent members as the primary source of funds stolen during their scheme.  Each of those Auto Wholesale Enterprise members, including defendants Whitehead, is a principal and control person of the Enterprise, and each is jointly and severally liable with the others for the damages caused by that Enterprise, whether through a judgment here or in the Pierce County Action.

4.31    Within the last five years, the Auto Wholesale Enterprise members have committed vastly more than three separate acts of criminal profiteering that form a pattern of criminal profiteering within the meaning of RCW 9A.82.010(4) and (12).  Those actions also give rise to debts that are nondischargeable under 11 USC §523(a)(2)(A), (4) and (6).

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

4.32     The facts giving rising to this lawsuit were not reasonably discoverable until July 2019, when Stanford and Sons defaulted on its loans to the Wrens.  Thus, these claims are timely under RCW 9A.82.100(7), given the filing of the original action in Pierce County Superior Court in January 2020.

4.33     The purpose of the fraudulent scheme executed by the Auto Wholesale Enterprise, including the J & N Investments Enterprise, was the financial gain of each of its constituent members through the theft of Stanford and Sons' financial resources, which originated with the $1,700,000 in loans received from plaintiffs Wren.  This criminal conspiracy was successful because, through their machinations, the Auto Wholesale Enterprise Members enriched themselves at the expense of plaintiffs and Stanford and Sons in the approximate amount of $1.7 million.

4.34     As a result of the aforementioned pattern of criminal profiteering activity, the Auto Wholesale Enterprise Members, including defendants Whitehead are liable to plaintiffs pursuant to RCW 9A.82.100(1)(a) for single damages in an amount to be proven at trial but alleged here to be at least $1,785,353.97, and pursuant to RCW 9A.82.100(4), for treble damages, along with the costs of suit, including reasonable investigative and attorney's fees.

4.35     Further, the Auto Wholesale Enterprise, including its constituent member defendant Herbert "Butch" L. Whitehead III, is each subject to orders of the type specified in RCW 9A.82.100(4), including but not limited to orders restricting his future activities, e.g., prohibiting him personally, and as a leader of the Auto Wholesale Enterprise, from operating in the wholesale or retail car and truck industries, plus requiring forfeiture as restitution of any property gained in part or whole from proceeds of that pattern of criminal profiteering activity.

## IV.  PRAYER FOR RELIEF

WHEREFORE Plaintiffs Kenneth and Alice Wren pray, both in their personal capacity and as assignees of Stanford and Sons, for entry of nondischargeable judgments under 11 USC

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

§523(a)(2)(A), (4) and (6) against Herbert L. Whitehead III, and the marital community of Herbert L. Whitehead III and Jennifer L. Whitehead as follows:

A.    For an award of single damages against defendants Whitehead in the amount of totaling $1,187,872.89, plus post-judgment interest accruing at the rate of 16% per annum, fees and costs as of August 1, 2019, as a result of defendants Whiteheads' actual fraud and willful and malicious injury in inducing plaintiffs Wren to loan Stanford and Sons $1,700,000. The determination of any credits from other net recoveries by plaintiffs must await the conclusion of all related matters;

B.    For an Order of this Court that all transfers of Stanford and Sons' assets to defendants, in an amount to be proven at trial but here estimated to be $1,785,353.97, be set aside and avoided, and that defendants Whitehead be held liable for the same under 11 USC §523(a)(2)(A), (4) and (6);

C.    For a joint and several judgment against defendants Whitehead as a result of the fraudulent transfers complained of herein requiring those defendants to reconvey the assets so transferred, to the extent the items transferred are still in their possession, and for the proceeds or for the value of the assets otherwise transferred in an amount to be proven at trial but here alleged to be $1,785,353.97;

D.    For an award of replevin of the following personal property:

| Vin # | Description | Est. ACV in US $ | Physical Possession |
|---|---|---|---|
| J9M93AH837784 | 1979 Jeep CJ7 | $12,500 | Whitehead |
| 5N1AA08C58N600152 | 2008 Nissan Armada | $6,500 | Whitehead |
| 1HD1FRW192Y655378 | 2002 Harley Davidson | $4,500 | Whitehead |
| 1HD1BYB175Y065664 | 2005 Harley Davidson | $5,000 | Whitehead |
| 2BPSCG7C97V000093 | 2007 Skidoo | $2,500 | Whitehead |
| 1HD1FC4198Y682119 | 2008 Harley Davidson | $7,500 | Whitehead |
| 1J4GA39128L583815 | 2008 Wrangler | $17,500 | Whitehead |

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148

| Vin # | Description | Est. ACV in US $ | Physical Possession |
|---|---|---|---|
| 1GKFK13097R141732 | 2007 Yukon | $8,705 | Pierce County Sup. Court Registry |
| | | $64,705.00 | |

E.     For an award against Herbert Whitehead III and his marital community for $436,750, for the nondischargeable debts arising from Whitehead's breach of fiduciary duties that also constitute violations of §523(a)(4);

F.     A joint and several award pursuant to the terms of RCW Ch. 9A.82.100 against the defendants in favor of plaintiffs pursuant to RCW 9A.82.100(1)(a) for single damages to be proven at trial but alleged to be $1,785,353.97, for treble damages pursuant to RCW 9A.82.100(4), along with the costs of suit, including reasonable investigative and attorney's fees as contemplated by statute;

G.     For the issuance or grant of relief as permitted by the terms of RCW 9A.82.100(4), including but not limited to the issuance of injunctions against defendants Whitehead prohibiting them from operating in the automobile wholesale or resale industry;

H.     For prejudgment interest;

I.     For attorneys' fees and costs; and

J.     For such other and further relief that the Court deems proper.

DATED this 16th day of May, 2022.

KINSEL LAW OFFICES, PLLC


By  /s/ William A. Kinsel
    William A. Kinsel, WSBA # 18077
Attorneys for Creditors Kenneth and Alice Wren

300p.doc

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
FOURTH & BATTERY BUILDING
2401 Fourth Avenue, Suite 850
SEATTLE, WASHINGTON 98121
(206) 706-8148